ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| ASOCIACIÓN DE EMPLEADOS GERENCIALES DE LA CORPORACIÓN DEL SEGURO DEL ESTADO<br><br>DEMANDANTE APELANTE<br><br>V.<br><br>COMISIÓN INDUSTRIAL DE PUERTO RICO, ET AL.<br><br>DEMANDADOS APELADOS | KLAN202400588 | *APELACIÓN* procedente del Tribunal de Primera Instancia Sala de San Juan<br><br>Sala: 801<br><br>Caso Núm. SJ2021CV06357<br><br>Sobre:<br><br>SENTENCIA DECLARATORIA |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Candelaria Rosa, la jueza Alvarez Esnard, y la jueza Díaz Rivera

Brignoni Mártir, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 23 de septiembre de 2024.

Comparece ante nos, la Asociación de Empleados Gerenciales de la Corporación del Fondo del Seguro del Estado, en representación de Eric Colón Alicea; Noemí Ortiz Cruz; Mónica Collazo Rosado; Ivette Tirado Rodríguez; Araceli Medina Claudio; Astrid Tatum; y Lourdes Rosado, (en adelante, "la parte apelante").[1] Su comparecencia es a los fines de solicitar nuestra intervención para que dejemos sin efecto la determinación emitida y notificada el 15 de mayo de 2024, por el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante el referido dictamen, dicho tribunal declaró *Ha Lugar* la "*Moción de Desestimación a Demanda,*" presentada por el Gobierno de Puerto Rico en representación del Gobernador de Puerto Rico (en adelante, "el Gobernador") y de la Oficina de Recursos Humanos y Asuntos Laborales (en lo sucesivo, por sus siglas, OATRH). En consecuencia, desestimó el caso de epígrafe.

---

[1] El 4 de abril de 2022, el tribunal de instancia, desestimó las causas de acción de José E. Ortiz Torres y Eva Meléndez. La razón de ello estribó en que estos no eran empleados de la Comisión Industrial de Puerto Rico.

Todo, dentro de un pleito sobre sentencia declaratoria, instado en contra de la Comisión Industrial de Puerto Rico (en adelante, "la Comisión Industrial"); la Corporación del Fondo del Seguro del Estado (en lo sucesivo, por sus siglas, "CFSE")[2]; la OATRH; el Gobernador; y el Departamento de Justicia, (en adelante, en conjunto, "la parte apelada.")

Por los fundamentos que expondremos a continuación *confirmamos* la determinación recurrida.

**I.**

El 29 de septiembre de 2021, la parte apelante presentó la "*Demanda Solicitud de Sentencia Declaratoria y Solicitud de Remedios*" de epígrafe. Mediante esta, expresó que instaba su reclamación en representación de los empleados gerenciales que laboraban en la Comisión Industrial. Sostuvo, que la presente causa de acción tuvo génesis el 29 de marzo de 2021, con la notificación del "*Memorando Especial Número 14-2021 (Enmendado).*" Indicó que, mediante el referido memorando, la OATRH, notificó que el Gobernador concedió el 1 de abril de 2021 como un día libre, en aras de honrar la celebración cristiana de Semana Santa. Además, adujo que el presidente de la Comisión Industrial emitió, a tenor de dicho memorando, un comunicado a los fines de informar que el referido día libre sería con cargo a su licencia de vacaciones.

A la luz de lo expuesto, argumentó que la actuación del Gobernador, de la Comisión Industrial y la OATRH violentaba la Ley de Vacaciones y Licencia por Enfermedad de Puerto Rico, Ley Núm. 180-1998, según enmendada, 29 LPRA sec. 250 et seq., y la Ley de Cumplimiento con el Plan Fiscal, Ley Núm. 26-2017, según enmendada, 3LPRA, sec. 9461, et seq. Ello, dado que, no tenían facultad en ley para imponer el día libre con cargo a vacaciones, cuando existía un plan de vacaciones previamente establecido. Añadió, que dicho consumo de sus vacaciones se estableció sin existir una petición suya al respecto. A su vez, arguyó que el aludido día

---

[2] El 6 de mayo de 2022, el tribunal de instancia, notificó una "*Sentencia Parcial.*" Mediante esta, declaró el desistimiento con perjuicio de la reclamación entablada en contra de la CFSE.

libre se impuso en una fecha en la que había empleados que estaban disponibles para trabajar.

Agregó, que el proceder de la parte apelada violentó su derecho a un debido proceso de ley, y constituyó una privación y embargo ilegal de su salario. En virtud de lo expuesto, peticionó al foro recurrido que excluyera el día 1 de abril de 2021 de los días cargados a su licencia de vacaciones. Además, entre otras cosas, solicitó que declarara el cese de la imposición del consumo de la licencia de vacaciones sin que medie petición del empleado.

Posteriormente, el 8 de marzo de 2022, el Gobierno de Puerto Rico, en representación del Gobernador y la OATRH presentó una "*Moción de Desestimación a Demanda.*" Mediante esta, arguyó que la parte apelante no tenía legitimación activa para vindicar sus alegados derechos, dado que, no había demostrado el haber sufrido un daño claro y palpable. Añadió, que era improcedente dictar sentencia declaratoria a favor de la parte apelante, toda vez que, no demostró la existencia de una situación de incertidumbre o inseguridad en cuanto a sus derechos. A su vez, sostuvo que el Gobernador actuó legítimamente. Ello, puesto que su actuación estaba protegida bajo las facultades que le concede el Artículo 387 del Código Político de Puerto Rico, 1 LPRA, sec. 71. Además, argumentó que la acción de determinar que un día libre sea cargado a vacaciones es cónsona con la política pública de que los fondos del Estado deben utilizarse para fines públicos legítimos.

Por otro lado, alegó que no se había afectado el derecho a la libertad de culto de la parte apelante. Agregó, que el conceder un día libre en Semana Santa no obligaba a ninguna persona a participar de la celebración de algún acto religioso en particular. En virtud de lo expuesto, solicitó la desestimación de la "*Demanda Solicitud de Sentencia Declaratoria y Solicitud de Remedios*", toda vez que dejaba de exponer una reclamación que justificara la concesión de un remedio.

Por su parte, el 10 de marzo de 2022, el Estado Libre Asociado (en adelante, por sus siglas, "ELA"), en representación de la Comisión Industrial, presentó una "*Contestación a Demanda*." En esencia, negó las alegaciones expuestas en la "*Demanda Solicitud de Sentencia Declaratoria y Solicitud de Remedios*." Únicamente, admitió que advino en conocimiento del contenido del "*Memorando Especial Número 14-2021 (Enmendado),*" y que envío un comunicado para informar que el 1 de abril de 2021 sería un día libre con cargo a vacaciones.

Así las cosas, el 31 de marzo de 2022, la parte apelante presentó una *"Moción en Oposición a Moción de Desestimación a Demanda."* Mediante esta expresó, que la Ley de Cumplimiento con el Plan Fiscal, *supra,* es una legislación que tiene primacía sobre otras normativas. Agregó, que en virtud de ella las agencias junto a los empleados y supervisores deben formar un plan de vacaciones. Así pues, sostuvo que la acción de la parte apelada de imponer un día libre con cargo a vacaciones atentaba contra su periodo de descanso establecido en el referido plan. A su vez, argumentó que es un acto que intervenía con el interés propietario sobre su licencia de vacaciones sin mediar un debido proceso de ley. Ante ello, solicitó al foro sentenciador que declarara *No Ha Lugar* la "*Moción de Desestimación a Demanda."*

Trabada la controversia, el 15 de mayo de 2024, el tribunal de instancia notificó la "*Sentencia*" que nos ocupa. Mediante esta, declaró *Ha Lugar* la" *Moción de Desestimación a Demanda."* Consecuentemente, desestimó el caso de epígrafe.

En desacuerdo, el 13 de junio de 2024 la parte apelante presentó el recurso que nos ocupa. Mediante este, esbozó los siguientes señalamientos de error:

> 1. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LA DEMANDA, RESOLVIENDO QUE LA LEY NÚM. 26 DEL 29 DE ABRIL DE 2017 (LEY DE CUMPLIMIENTO CON EL PLAN FISCAL), NO TIENE EL ALCANCE DE LIMITAR LA POSIBILIDAD DEL GOBERNADOR PARA DECRETAR DÍAS LIBRES CON CARGO A LICENCIA DE VACACIONES.

2. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LA DEMANDA, RESOLVIENDO QUE LA CONCESIÓN DEL DÍA LIBRE EN LAS CIRCUNSTANCIAS EN QUE SE DECRETÓ NO INTERVIENE CON EL DERECHO CONSTITUCIONAL A LA LIBERTAD DE CULTO DE LA CODEMANDANTE ASTRID TATUM.

Posteriormente, el 15 de julio de 2024, el Gobierno de Puerto Rico, por conducto de la Oficina del Procurador General, presentó ante nuestra consideración un "*Alegato del Estado y Solicitud de Desestimación.*" Entre otras cosas, argumentó que no se desprendía del Sistema Unificado de Manejo y Administración de Casos (SUMAC) que la parte apelante haya notificado al foro recurrido de la presentación del recurso de epígrafe. En respuesta, el 17 de julio de 2024, la parte apelante presentó una "*Moción para Oponernos a Solicitud de Desestimación.*" Mediante esta, sostuvo que notificó adecuadamente al foro recurrido de referido recurso.

Con el beneficio de la comparecencia de las partes, procedemos a resolver la controversia ante nos.

**II.**

**A.    Moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil:**

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, establece que antes de presentar una alegación responsiva, la parte demandada puede instar una moción en la que solicite la desestimación de la demanda instada en su contra. *Casillas Carrasquillo v. ELA,* 209 DPR 240, 247 (2022); *Conde Cruz v. Resto Rodríguez*, 205 DPR 1043, 1065 (2020); *Aut. de Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008). En lo pertinente, la referida regla dispone que:

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada: (1) Falta de jurisdicción sobre la materia; (2) Falta de jurisdicción sobre la persona; (3) Insuficiencia del emplazamiento; (4) Insuficiencia del diligenciamiento del emplazamiento; (5) **Dejar de exponer una reclamación que justifique la concesión de un remedio;** (6) Dejar de acumular una parte indispensable. […] 32 LPRA Ap. V., R.10.2. (Énfasis nuestro).

Conforme dispone el inciso (5) de la precitada regla se podrá solicitar la desestimación de una demanda por el fundamento de que ésta no esboza una reclamación que justifique la concesión de un remedio.

Regla 10.2 (5) de Procedimiento Civil, *supra*. Véase, *Costas Elena y otros v. Magic Sport Culinary Corp.*, y otros, 2024 TSPR 13. Al adjudicar una moción a base de este fundamento los tribunales están obligados a tomar como ciertos todos los hechos bien alegados en la demanda y, a su vez, considerarlos de la forma más favorables a la parte demandante. *Blassino Alvarado y otro v. Reyes Blassino y otro*, 2024 TSPR 93; *López García v. López García*, 200 DPR 50, 69 (2018). En particular, el tribunal debe tomar como ciertos los hechos en la demanda que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas. *Accurate Sols. v. Heritage Environmental*, 193 DPR 423, 433 (2015). Ello es así ya que, lo que se ataca con esta moción es un vicio intrínseco de la demanda, no los hechos aseverados. *Íd*.

Entonces, para que proceda una moción de desestimación, la parte demandada tiene que demostrar de forma certera que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que se pueda probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor. (Citas omitidas). *López García v. López García,* supra. No obstante, en nuestro ordenamiento se considera que solo en casos extremos, se debe privar a un demandante de su día en corte. *Accurate Sols. v. Heritage Environmental*, supra. En vista de lo anterior la desestimación no procede si la demanda es susceptible de ser enmendada. *Íd*.

**B.     Ley de Cumplimiento con el Plan Fiscal (Ley Núm. 26-2017):**

La Ley de Cumplimiento con el Plan Fiscal, Ley Núm. 26-2017, según enmendada, 3 LPRA sec. 9461et seq., se creó a los fines de atemperar el marco jurídico para poder cumplir con las exigencias de la Ley Federal Promesa. Exposición de Motivos de la Ley Núm. 26-2017, *supra*. La referida legislación debe su existencia a la situación de urgencia fiscal de Puerto Rico. Ante ello, la legislatura consideró necesaria su aprobación "para que el Estado [pudiera] contar con la liquidez suficiente para poder

pagar la nómina de los empleados públicos y sufragar los servicios esenciales que ofrece a sus ciudadanos." *Íd.*

El Artículo 1.02 de la precitada ley, establece que sus disposiciones tendrán primacía sobre cualquier ley. 3 LPRA sec. 9462. A tenor de ello esboza lo siguiente:

> A partir de la fecha de aprobación de esta ley, se deja sin efecto toda ley orgánica, ley general o especial, artículo o sección de ley, normativa, cláusulas y/o disposiciones de convenios colectivos, acuerdos, acuerdos suplementarios, órdenes administrativas, políticas, manuales de empleo, cartas circulares, certificaciones, reglamentos, reglas y condiciones de empleo, cartas normativas, planes de clasificación o retribución, cartas contractuales, y/o disposiciones aplicables exclusivamente a los beneficios marginales que podrán disfrutar los funcionarios o empleados públicos unionados o no unionados del Gobierno de Puerto Rico, incluyendo a todo empleado unionado o no unionado de las Corporaciones Públicas del Gobierno de Puerto Rico, que vaya en contra de las disposiciones de esta Ley. Esto no elimina el derecho de los sindicatos de negociar condiciones de trabajo, salarios y otras condiciones no económicas no contenidas en la presente legislación conforme al ordenamiento jurídico vigente. *Íd.*

De otra parte, la Ley Núm. 26-2017, *supra*, es aplicable a todas las "Entidades de la Rama Ejecutiva del Gobierno de Puerto Rico." 3 LPRA sec. 9471. Forman parte del referido término cada una de las agencias, instrumentalidades y Corporaciones Públicas de nuestro gobierno. Ello, independientemente del grado de autonomía fiscal o presupuestaria que ostente cada entidad pública. *Íd.*

En lo que concierne a su Declaración de Política Pública, la Ley Núm. 26-2017, *supra*, promueve la igualdad y uniformidad de los beneficios marginales que disfrutan todos los empleados públicos. 3 LPRA sec. 9473. Cónsono con lo anterior, los referidos beneficios marginales se disfrutarán según el interés legislativo que justificó su concesión y "**conforme a un adecuado balance entre las necesidades del empleado y la óptima utilización de los recursos disponibles, atendiendo el momento histórico en que nos encontramos**." *Íd.* (Énfasis suplido). Entre los beneficios marginales que podrán disfrutar los empleados públicos se encuentran las licencias de vacaciones. 3 LPRA sec. 9474 (1). Estas, se conceden para proporcionarle al empleado un período razonable de descanso anual. 3 LPRA sec. 9474 (1)(d). Las licencias de vacaciones

deberán formularse de acuerdo con "un plan de vacaciones, por cada año natural, en coordinación con los supervisores y los empleados, que establezca el período dentro del cual cada empleado disfrutará de sus vacaciones, en la forma más compatible con las necesidades del servicio." *Íd.*

**C.      Derecho a la Libertad de Culto:**

En Puerto Rico el derecho a la libertad de culto tiene arraigo constitucional. Sobre el particular, nuestra Carta Magna establece que "[n]o se aprobará ley alguna relativa al establecimiento de cualquier religión ni se prohibirá el libre ejercicio del culto religioso. Habrá completa separación de la iglesia y el estado." Art. II, sec. 3 Const. ELA [Const. PR], LPRA, Tomo I. En esencia, la cláusula relacionada a la libertad de culto garantiza que se puedan practicar las creencias religiosas individuales o colectivas. *Asoc. Academias y Col. Cristiano v. E.L.A.*, 135 DPR 150, 160 (1994). En los casos resueltos al amparo de la libertad de culto, se analiza la existencia de algún tipo de intervención del Estado con el ejercicio de la religión. *Mercado, Quilichini v. U.C.P.R.*, 143 DPR 610, 636 (1997). Dicha intervención, para que sea invalida, debe dificultar la práctica de alguna actividad religiosa. *Íd.*

Para concluir que se ha trastocado el derecho a la libertad de culto, es necesario examinar la acción estatal en cuestión; el interés que motivó al Estado para ejecutar la referida acción; y el efecto que tiene dicha acción sobre determinada practica religiosa. *Lozada Tirado et al. v. Testigos Jehová,* 177 DPR 893, 914 (2010). Cabe destacar, que la parte que alegue que se le ha violentado su libertad de culto tiene el peso de probar sus planteamientos. *Asoc. Academias y Col. Cristiano v. E.L.A., supra,* pág. 161. En ese sentido, dicha parte, debe demostrar que el Estado no tiene un interés público que justifique su actuación o que se le ha impuesto un gravamen sustancial al ejercicio de su religión. *Íd.* "Una carga mínima o incidental impuesta por el Estado a una parte de ordinario no es suficiente para invocar exitosamente la garantía sobre la libertad de culto." *Íd.*

**D.** **Ley Especial de Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado de Puerto Rico (Ley Núm. 66-2014):**

La Ley Especial de Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado de Puerto Rico, Ley Núm. 66-2014, según emendada, 3 LPRA sec. 9101 et seq., se creó a los fines de atender la crisis fiscal de nuestro sistema gubernamental. Siendo así, las disposiciones de la precitada legislación se centran en evitar que se trastoque la operación del gobierno. A tenor de ello, su Exposición de Motivos lee como sigue:

> [S]e declara la existencia de una situación de emergencia económica y fiscal grave en Puerto Rico que hace necesaria la aprobación de esta ley especial de carácter socioeconómico que le permita al Estado contar con la liquidez suficiente para poder pagar la nómina de los empleados públicos y sufragar los servicios esenciales que ofrece a sus ciudadanos. Ello, mediante la implementación de medidas de reducción de gastos y de estabilización fiscal para la recuperación económica de Puerto Rico, sin recurrir al despido de empleados públicos de carrera ni afectar las funciones esenciales de las agencias de gobierno que brindan servicios de seguridad, educación, salud o de trabajo social.

La Ley 66-2014, *supra,* tiene primacía sobre cualquier legislación. 3 LPRA sec. 9102. A su vez, es de aplicabilidad a toda "Entidad de la Rama Ejecutiva." Entiéndase, agencias, instrumentalidades y corporaciones públicas del Estado Libre Asociado de Puerto Rico. 3 LPRA sec. 9111. En lo atinente, su Artículo 11 establece que durante su vigencia **no se concederán aumentos en beneficios ni compensación monetaria extraordinaria a los empleados de las "Entidades de la Rama Ejecutiva**." 3 LPRA sec. 9117 (a). (Énfasis suplido). Como parte del listado de compensaciones monetarias extraordinarias, se encuentra **la concesión de días y horas libres con paga sin cargo a licencia alguna.** 3 LPRA sec. 9117 (c)(vi). (Énfasis suplido).

Es meritorio destacar, que la prohibición de las antes dichas concesiones aplica a todos los empleados públicos independientemente que de su puesto sea uno de confianza, carrera, transitorio o irregular. 3 LPRA sec. 9117 (f). De igual modo, la aplicación de la Ley 66-2014, *supra,*

cobija a todo empleado público irrespectivo de la existencia de alguna de las siguientes instancias:

> [D]isposición contraria en cualquier ley, normativa, reglamento, convenio colectivo, políticas, manuales de empleo, cartas circulares, cartas contractuales, certificaciones, reglamentos, reglas y condiciones de empleo, cartas normativas, planes de clasificación o retribución. Esto incluye, sin que se entienda como limitación, la Ley Núm. 184- 2004, según enmendada, conocida como la "Ley para la Administración de los Recursos Humanos en Servicio Público"; y los reglamentos emitidos y aprobados en caso de corporaciones públicas, por la respectiva junta de gobierno o autoridad nominadora; o en caso de otras entidades públicas, su respectivo organismo rector o autoridad nominadora.
> 3 LPRA sec. 9117 (g).

Ahora bien, la Ley 66-2014, *supra,* también establece lo siguiente:

> Los acuerdos alcanzados con los representantes autorizados de los empleados unionados, y a su vez, ratificados por escrito por la matrícula de unionados concernida y el representante autorizado de la Entidad de la Rama Ejecutiva mediante y conforme a los parámetros de la negociación aquí permitida, sustituirán lo dispuesto en los incisos (a), (b), (c) y (d) de este Artículo y cualquier otra disposición que resulte pertinente en esta ley y que haya sido objeto de la negociación. 3 LPRA sec. 9117 (i).

Finalmente, la Ley 66-2014, *supra,* contiene una disposición relacionada con "prácticas ilícitas." Esta lee como sigue:

> La implementación de cualquier medida autorizada en este Capítulo ya sea por la Oficina de Gerencia y Presupuesto, las Entidades de la Rama Ejecutiva y sus respectivos funcionarios, el Gobernador, o cualquiera de los representantes de éstos, no constituirá una violación a los convenios colectivos existentes ni constituirá una práctica ilícita. 3 LPRA sec. 9119.

**III.**

En su recurso, la parte apelante sostiene que la determinación de conceder la fecha del 1 de abril de 2021 como un día libre con cargo a licencia de vacaciones menoscaba su periodo de descanso. Cónsono con lo anterior, plantea que dicha acción trastoca el plan de vaciones que previamente designó junto a su patrono para el disfrute de dicha licencia. Entiende, que la existencia del referido plan de vacaciones, según las disposiciones de la Ley Núm. 26-2017, *supra*, limita la discreción del patrono para intervenir con el periodo de vaciones. Añade, que la concesión de un día libre con cargo a vacaciones violenta su interés propietario sobre la referida licencia. De otra parte, argumenta que la declaración del aludido día libre incide en su libertad religiosa. Ello, dado

que, penaliza al empleado que está dispuesto a trabajar y no práctica la filosofía religiosa del cristianismo.

En oposición, la parte apelada aduce que el Gobernador tiene la facultad de conceder días feriados, según se establece en el Artículo 387 del Código Político de Puerto Rico, *supra;* y en el Artículo 205 de la Ley de Cumplimiento con el Plan Fiscal, Ley Núm. 26-2017, según enmendada, 3 LPRA sec. 9475. A su vez, argumenta que el remedio solicitado por la parte apelante es improcedente, toda vez que contraviene el mandato constitucional de que los fondos públicos solo se deben utilizar para fines públicos. Añade, que el plan de vacaciones al cual hace alusión la parte apelante no debe estar separado del interés superior de atender las necesidades del servicio y la utilización adecuada de los recursos fiscales del gobierno. Finalmente, esgrime que la parte apelante no cumple con el peso de la prueba requerido para demostrar que el Estado le impuso un gravamen sustancial a su libertad de culto.

Tras examinar de forma cuidadosa la totalidad del expediente ante nos, determinamos *confirmar* el dictamen recurrido.

De entrada, el marco jurídico vigente es claro en cuanto a la facultad del Gobernador de conceder días libres. Así, lo establecen de forma expresa el Código Político de Puerto Rico, *supra* y la Ley Núm. 26-2017, *supra*. Atendida dicha cuestión, corresponde examinar, ¿si el plan de vacaciones consagrado en la Ley Núm. 26-2017, *supra*, limita la autoridad del Gobernador de conceder días libres con cargo a vacaciones? La respuesta compulsoria es en la negativa.

Ciertamente la Ley Núm. 26-2017, *supra,* se ciñe, en cuanto a beneficios marginales, a esbozar el derecho de los empleados públicos a tener un periodo de descanso anual. Tal como fue expuesto, dicho periodo será establecido mediante un plan de vacaciones, el cual se coordinará entre la agencia, el supervisor y el empleado. Ahora bien, los beneficios marginales consagrados en la referida legislación no se conceden irrestrictamente. Esto, dado que, su existencia se debe atemperar a un

"adecuado balance entre la necesidad del empleado y la óptima utilización de los recursos disponibles, atendiendo el momento histórico que nos encontramos." 3 LPRA sec. 9473.

De otra parte, también es cierto que la Ley Núm. 26-2017, *supra*, no incluye una referencia expresa a la concesión de días libres con cargo a vacaciones. Tampoco incorpora alguna disposición sobre la autoridad del gobernante o la agencia para ordenar que dichos días libres se carguen a licencia alguna. Ante ello, en términos de interpretación jurídica, la aplicación analógica es de relevancia para el asunto que nos ocupa. La referida doctrina hermenéutica lee como sigue:

> La aplicación analógica procede cuando las leyes no contemplan un caso específico, pero se refieren a la misma materia u objeto, entre los que se aprecia identidad de razón. En tal caso, deberán ser interpretadas refiriendo las unas a las otras, por cuanto lo que es claro en uno de sus preceptos pueda ser tomado para explicar lo que resulte dudoso en otro. Artículo 21 del Código Civil de Puerto Rico, Ley Núm. 55-2020, 31 LPRA sec. 5343.

Cónsono con lo anterior, en nuestro ordenamiento jurídico es posible la integración de fuentes legales que versen sobre una misma materia sustantiva para así completar la norma. Ello, a los fines de ofrecer mayor claridad. Véase, J. M. Frainacci Fernós, *Hermenéutica Puertorriqueña*, Editorial InterJuris, 2019, pág. 145-148. Para este ejercicio de evaluación simultánea de normas jurídicas, es necesario incluir las disposiciones de la Ley Núm. 66-2014, *supra*. El referido estatuto, de forma similar a la Ley Núm. 26-2017, *supra,* tiene como punto de partida atender la crisis fiscal de Puerto Rico. Además, ambas legislaciones tienen primacía sobre cualquier otra legislación y son de aplicabilidad a las Entidades de la Rama Ejecutiva del Gobierno de Puerto Rico. De igual modo, no son incompatibles entre sí.

En lo que aquí nos concierne, la Ley Núm. 66-2014, *supra*, aborda la temática de los beneficios marginales. Particularmente, para evitar que se concedan aumentos en beneficios y compensaciones monetarias extraordinarias. A esos efectos, la Ley Núm. 66-2014, *supra*, cataloga "la concesión de días y horas libres con pago sin cargo a licencia alguna" como una compensación monetaria extraordinaria. Por consiguiente, como norma general, su concesión está vedada. Salvo, los acuerdos que se

alcancen conforme a los parámetros de negociación que permite la Ley Núm. 66-2014, *supra*. A su vez, la precitada ley establece que no será una práctica ilícita la implementación de las disposiciones que forman parte de las compensaciones monetarias extraordinarias. Consecuentemente, el conceder días libres con cargo a alguna licencia es una práctica que puede ser implementada por el Gobernador y las Entidades de la Rama Ejecutiva.

En vista de ello, y a tenor de nuestro ordenamiento civil, huelga leer de forma integrada la Ley Núm. 26-2017, *supra* y la Ley Núm. 66-2014, *supra*. De esta manera, se atempera el marco doctrinal en relación con las licencias de vaciones de los empleados públicos. Por consiguiente, al examinar tanto las disposiciones expresas y claras sobre la facultad del Gobernador de conceder días libres, como también la disposición expresa y específica sobre la prohibición de conceder días libres sin cargo a licencia alguna, se debe concluir que el estado de derecho vigente no le concede derecho a remedio alguno a la parte apelante.

La Ley Núm. 26-2017, *supra* no incluye una disposición expresa que prohíba al Gobernador conceder días libres con cargo a vacaciones. Además, el plan de vaciones no opera en el vacío dado que se crea en virtud de un balance de intereses. La ejecución de dicho balance incluye el interés de la mejor utilización de los recursos fiscales, conforme a la situación fiscal de Puerto Rico. Independientemente de ello, al llevar a cabo un ejercicio de integración de fuentes jurídicas, nuestro marco doctrinal existente prohíbe como regla general conceder días libres sin cargo a licencia alguna. En consecuencia, aun en la interpretación más laxa de los hechos, la parte apelante no tiene derecho a remedio alguno.

En cuanto a los argumentos atinentes a la libertad de culto, según fue expuesto, esta clase de controversia requiere analizar algún tipo de intervención estatal. Para el logro de ello, la parte apelante tenía el deber de colocarnos en posición, mediante una exposición de hechos específicos de los cuales se desprendiera la aducida intervención del Estado. Ese no fue el caso. La parte apelante únicamente se limitó a mencionar de una

forma sucinta que la concesión del día libre en cuestión penaliza al empleado que no práctica la filosofía religiosa cristiana. Ante ello, no cumplió con el peso de la prueba requerido para probar su caso, toda vez que no demostró ni detalló el gravamen sustancial que le impuso el Estado al ejercicio de su religión. Además, la concesión del día libre fue un decreto que aplicó de forma general a todos los empleados públicos mediante la cual no se obligaba a los empleados a participar de acto o actividad religiosa alguna. Así pues, a la parte apelante no le asiste la razón en su planteamiento sobre violación a la libertad de culto.

**IV.**

Por los fundamentos expuestos, declaramos *No Ha Lugar* la petición de desestimación, presentada por el Gobierno de Puerto Rico en el "*Alegato del Estado y Solicitud de Desestimación*" y *confirmamos* el dictamen recurrido.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones